## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAIM B. ARONOV, individually and on behalf of all others similarly situated, <br><br>       Plaintiff, <br><br> v. <br><br> RECEIVABLES MANAGEMENT PARTNERS, LLC, <br><br>       Defendant. | **Case No.:** 1:24-cv-6311 <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **1. FDCPA, 15 U.S.C. § 1692 *et seq*.** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Chaim B. Aronov (hereinafter "Plaintiff") brings this Class Action Complaint by and through his attorneys, against Defendant Receivables Management Partners, LLC ("Defendant" or "RMP") individually and on behalf of a class of all others similarly situated, based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1.      This is an individual and class action FDCPA action brought by a consumer alleging statutory damages, actual damages, and additional damages as the Court may allow based upon violations of 15 U.S.C. §§ 1692e(2)(A), e(10) and f(1), plus attorneys'

1

fees and costs. The FDCPA prohibits debt collectors from engaging in abusive, misleading/deceptive, and unfair collection practices.

2.      Congress enacted the Fair Debt Collection Practices Act ("the FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress expressed concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws…[we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

3.      Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "[e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. § 1692(e). After determining that the existing consumer protection laws were inadequate. *Id*. § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id*. § 1692k.

### JURISDICTION AND VENUE

4.      The District Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

5.      Supplemental jurisdiction exists for the state claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as Defendant conducts business in the Eastern District of New York and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## NATURE OF THE ACTION

7.     Plaintiff brings this class action on behalf of a class of New York consumers pursuant to § 1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collection Practices Act ("FDCPA").

8.     Plaintiff and the Class members are seeking damages and declaratory relief.

## PARTIES

9.     Plaintiff is a natural person obligated or allegedly obligated to pay any debt, and he is therefore a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3). Plaintiff resides in Fresh Meadows, New York, which is within the Eastern District of New York.

10.     Defendant is a foreign corporation that regularly conducts business in New York on a routine and systematic basis. Defendant's principal place of business is located in 1809 Broadway Street, Greensburg, Indiana 47240. Defendant is in the business of contacting consumers to collect consumer debt.

11.     Defendant's registered agent in New York is Corporation Service Company, located at 80 State Street, Albany, New York 12207.

12.     Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning

of the FDCPA, as defined at 15 U.S.C. §1692a(6). Defendant regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including New York.

13.     Any violations by Defendant as set forth in this Complaint were knowing and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

14.     During all time pertinent to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## CLASS ALLEGATIONS

15.     Plaintiff brings this claim on behalf of the following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

16.     The Class consists of:

  a.  All individual consumers with addresses in the State of New York;

  b.  Who received a collection communication from the Defendant;

  c.  For a Medical Debt;

  d.  Where the individual consumer had previously provided valid Medicaid Insurance information, for which they were an eligible beneficiary at the time of service, effectively shielding them from liability for the underlying medical debt; and

e. which improper collection actions occurred on or after a date one year prior to the filing of this action and on or before a date twenty-one days after the filing of this action.

17. The identities of all Class members are readily ascertainable from the records of the Defendant and those companies and entities on whose behalf it attempts to collect and/or have purchased debts.

18. Excluded from the class are the Defendant and all officers, members, partners, managers, directors and employees of the Defendant and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

19. There are questions of law and fact common to the Class, which common questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendant's communications to consumers, similar in form to that attached as Exhibit A, violate 15 U.S.C. §§ 1692e, 1692f, and 1692g.

20. Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff, nor her attorneys, have any interests that might cause them not to vigorously pursue this action.

21.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in this litigation:

a.  **Numerosity:** Plaintiff is informed and believes, and on that basis alleges, that the Class defined above is so numerous that joinder of all members would be impractical.

b.  **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendant's communications to consumers after creating a payment plan, in the form attached as Exhibit A, violate 15 U.S.C. §§ 1692e, 1692f, and 1692g.

c.  **Typicality:** Plaintiff's claims are typical of the claims of the class members. Plaintiff, and all members of the Class, have claims arising out of the Defendant's common uniform course of conduct complained of herein.

d.  **Adequacy:** Plaintiff will fairly and adequately protect the interests of the class members insofar as the Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues and class actions. Neither the Plaintiff, nor her counsel, have any interests that might cause them not to vigorously pursue the instant class action lawsuit.

e.  **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large

6

number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

22.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

23.     Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## FACTUAL ALLEGATIONS

24.     Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered above herein with the same force and effect as if the same were set forth at length herein.

25.     On August 13, 2024, RMP sent a text message to Plaintiff attempting to collect payment on Account No. 06-87326426.

26.     RMP identified itself as a debt collector, stated that "this is an attempt to collect a debt and any information obtained will be used for that purpose."

27.     RMP demanded that Plaintiff make a payment for Account No. 06-87326426.

28.    Upon receiving this message, out of concern and worry Plaintiff promptly contacted RMP at approximately 2:30 PM on the same day, mere minutes after the debt collection attempt.

29.    During this conversation, RMP informed Plaintiff that the debt in question belonged to his father, as they had Plaintiff's father listed as the individual responsible for the debt, and that they could therefore not discuss it with him.

30.    However, in a subsequent conversation on August 30, 2024, RMP provided different information. An RMP representative stated that the debt does indeed belong to Plaintiff providing his last four digits of his social security number, date of birth, and full name as verification.

31.    The representative also stated that this debt pertained to a NorthShore LIJ healthcare service provided in or around March 2023, by Dr. B. Acevedo, amounting to approximately $600.00.

32.    It is crucial to note that Plaintiff is a Medicaid recipient and, as such, is not personally responsible for medical expenses incurred unless he was not eligible for Medicaid at the time the services were tendered.

33.    However, Plaintiff was eligible for and covered by Medicaid at the time the medical services were rendered and continues to be until the current date.

34.    The bill for which payment was being sought is not an applicable co-payment but rather was pertaining to the actual medical services rendered to Plaintiff in or around March 2023.

35.    Defendant designed the communication as a demand for payment, indicating to consumers like Plaintiff that an outstanding balance was owed and payment was due on the debt. The debt collection attempt instructed Plaintiff to pay the debt.

36.    Upon information and belief, Defendant included language in the debt collection attempt to make Plaintiff believe that he was legally responsible for the subject debt.

37.    The collection attempt is misleading when construed as a whole, as Defendant demanded payment for a debt that Plaintiff was not legally responsible for pursuant to 42 U.S.C.S. § 1396a (LexisNexis, Lexis Advance through Public Law 118-71, approved July 25, 2024, in addition to other state and federal statutes and regulations, and the communication prominently featured payment demands and payment instructions.

38.    Upon information and belief, Defendant had actual knowledge or was on notice that Plaintiff was not legally obligated to pay the alleged debt because the debt was based on medical services rendered while Plaintiff was a Medicaid Beneficiary.

39.    Defendant knew, or reasonably should have known, that the alleged debts it was attempting to collect from Plaintiff derived from medical services that Plaintiff is not liable for, pursuant to federal and state law.

40.    Upon information and belief, Defendant knew or was otherwise on notice that some of the debts it attempts to collect are debts that are not valid because the debts derive from medical services rendered to an eligible Medicaid beneficiary.

41.    Upon information and belief, Defendant does not attempt to determine whether the debts it seeks to collect derive from medical services rendered to Medicaid beneficiaries (and are thus invalid), even though Defendant is on notice that many of the debts it attempts to collect so derive.

42.    Defendant's attempt to collect an alleged debt from Plaintiff was deceptive, misleading, unfair, unconscionable, and plainly violated numerous provisions of the FDCPA.

43.    Plaintiff has consistently maintained an excellent credit score, which he has diligently built over time. The actions of the Defendant caused Plaintiff to fear that a debt he never owed would be published to the credit reporting agencies, thereby potentially diminishing his hard-earned credit score and overall creditworthiness.

44.    This fear was particularly acute because August was a heavily credit-dependent month for Plaintiff. Specifically, Plaintiff needed to sign up for an American Express credit card to qualify for a rebate on a new car lease he was undertaking. The potential negative impact on his credit prospects could have jeopardized these important financial transactions.

45.    Due to these imminent credit-dependent activities and the fear of potential credit damage, Plaintiff felt compelled to take immediate action. He paid for a comprehensive review of his Experian, TransUnion, and Equifax credit reports to ensure no such erroneous debt was being reported. This review incurred a cost of fifty dollars, representing a concrete economic injury directly resulting from the Defendant's actions.

46.     The Defendant's collection efforts caused Plaintiff to suffer concrete and particularized injuries and harm. By attempting to extract money that Plaintiff did not owe, Defendant's actions led to significant emotional distress. Upon receiving RMP's debt collection communication, Plaintiff experienced worry and anxiety about potentially owing money for medical treatment he knew that he was not liable to pay for.

47.     Plaintiff's distress was further exacerbated by concerns that he might have been mistaken about his legal obligations and could face legal consequences for not paying a debt he believed he did not owe. This uncertainty and fear of potential legal action caused Plaintiff to experience worry and undue stress, impacting his daily life and well-being.

48.     The level of distress experienced by Plaintiff was directly proportionate to and commensurate with the violations alleged. The attempt to collect a non-existent debt, coupled with the potential threat to Plaintiff's carefully cultivated credit standing, created a significant and ongoing source of stress. This was particularly impactful given the critical timing of Plaintiff's planned financial activities, which hinged on his strong credit profile.

49.     Plaintiff suffered harm to his peace of mind and sense of financial security. The need to constantly worry about and monitor his credit reports for false information, along with the fear of potential long-term damage to his credit standing, caused Plaintiff ongoing anxiety and frustration.

50.     Furthermore, Plaintiff experienced a significant waste of time and personal resources as a direct result of the Defendant's actions. Plaintiff was forced to expend

considerable time and effort to understand the nature of the services for which he was being pursued for payment, despite being a Medicaid recipient.

51.    This involved multiple time-consuming activities, including: a) Engaging in phone conversations with the debt collector to ascertain the details of the alleged debt and why he was being pursued. b) Contacting his healthcare provider to investigate why he was being billed despite his status as an eligible Medicaid recipient. c) Engaging in lengthy discussions with Medicaid representatives to understand why he was being pursued for a debt he did not owe and to confirm his coverage status.

52.    These activities not only caused significant stress and inconvenience but also resulted in a tangible loss of time that could have been spent on productive personal or professional pursuits. The cumulative effect of these efforts represents a concrete harm to Plaintiff, adding to the overall injury caused by the Defendant's actions.

53.    In addition to the aforementioned harms, Plaintiff suffered significant embarrassment as a direct result of the Defendant's actions.

54.    By pursuing a non-existent debt and effectively branding Plaintiff as delinquent in an alleged payment obligation that had gone to collections, the Defendant caused Plaintiff to experience feelings of humiliation.

55.    This false characterization of Plaintiff as someone who fails to meet their financial obligations is particularly disturbing to Plaintiff given that: a) Plaintiff has always prided himself on maintaining financial responsibility and meeting all legitimate payment obligations promptly. b) As a Medicaid recipient, Plaintiff felt stigmatized and

mischaracterized, as if he were attempting to avoid paying for services he was entitled to receive.

56.    This unwarranted embarrassment represents another significant emotional harm to Plaintiff, adding to the overall injury caused by the Defendant's improper debt collection attempt.

57.    These harms, both economic and non-economic, stem directly from the Defendant's alleged violations and demonstrate concrete, particularized injuries sufficient to establish standing.

58.    As a result of Defendant's conduct, Plaintiff has sustained actual damages including, but not limited to, embarrassment, stress and anxiety, lost sleep, emotional and mental pain, and anguish.

## **CLASS ACTION ALLEGATIONS**

### **The Class**

59.    Plaintiff brings this lawsuit as a class action pursuant to Fed. R. Civ. P. 23.

60.    Plaintiff seeks certification of the class, initially defined as follows:

> All individual consumers with addresses in the State of New York; Who received a collection communication from the Defendant; For a Medical Debt; Where the individual consumer had previously provided valid Medicaid Insurance information, for which they were an eligible beneficiary at the time of service, effectively shielding them from liability for the underlying medical debt; and which improper collection actions occurred on or after a date one year prior to the filing of this action and on or before a date twenty-one days after the filing of this action.

61.    Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendant.

13

**Numerosity**

62.    Upon information and belief, Defendant has sent collections letters in attempt to collect a debt to hundreds if not thousands of consumers New York, each of which violates the FDCPA. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

63.    The letters sent by Defendant, and received by the Class, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

64.    The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**Common Questions of Law and Fact**

65.    There are questions of law and fact common to the class that predominates over any questions affecting only individual Class members. These common questions of law and fact include, without limitation: (i) whether Defendant violated various provisions of the FDCPA; (ii) whether the Plaintiff and the Class have been injured by the conduct of Defendant; (iii) whether the Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and (iv) whether the Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

**Typicality**

66.    The Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendants common uniform course of conduct complained of herein. Plaintiff's claims are

typical of the claims of the Class, and Plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

**Protecting the Interests of the Class Members**

67.     Plaintiff will fairly and adequately represent the Class members' interests, in that the Plaintiff's counsel is experienced and, further, anticipates no impediments in the pursuit and maintenance of the class action as sought herein.

68.     Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

69.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, this being specifically envisioned by Congress as a principal means of enforcing the FDCPA, as codified by 15 U.S.C. § 1692(k).

70.     The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

71.     Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

72.     Certification of a class is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

73.     Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

74.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

75.     Absent a class action, the Class members will continue to suffer losses borne from Defendant's breaches of Class members' statutorily protected rights as well as monetary damages, 6 thus allowing and enabling: (a) Defendant's conduct to proceed and; (b) Defendant to further enjoy the benefit of its ill-gotten gains.

76.     Defendant has acted, and will act, on grounds generally applicable to the entire Class, thereby making appropriate a final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**
**DEFENDANT'S VIOLATIONS OF**
**FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692e(2)(A)**

77.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78.     The FDCPA is a comprehensive regulatory scheme that Congress enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors and to promote consistent state action to protect consumers against debt collection abuses.  15 U.S.C. §§ 1692(a), (e).

79.    When Congress enacted the FDCPA in 1977, Congress had found that abusive debt collection practices harmed consumers by, among other things, increasing personal bankruptcy, marital instability, loss of employment, and invasion of privacy.

80.    Defendant used the mail to pursue an uncollectible debt against Plaintiff and against all other class members similarly situated.

81.    Upon information and belief, Defendant utilizes these false, deceptive, misleading, unfair, and unconscionable tactics as a matter of course when attempting to collect debts from consumers such as Plaintiff and all other class members similarly situated, despite the fact that Defendant knew or should have known that the alleged debt derived from medical services rendered to Medicaid beneficiaries.

82.    Defendant's conduct is intentional. Defendant did not maintain procedures reasonably adapted to avoid such conduct, but rather intended the conduct.

83.    Defendant violated § 1692e(2)(A) of the FDCPA by misrepresenting the legal status of the alleged debt that Defendant attempted to collect from Plaintiff and all other class members similarly situated. Defendant's misrepresentations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer. 15 U.S.C. § 1692e(2)(A).

84.    Defendant's acts as described above, and similar acts relating to the class members similarly situated, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

85.    Defendant's debt collection actions broadly relating to the class members similarly situated, including sending the debt collection communication, used false,

deceptive, or misleading representations or means in connection with the collection of a debt.

86.     As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, stress, frustration and loss of time. He is entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**COUNT II**
**DEFENDANT'S VIOLATIONS OF**
**FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692e(10)**

87.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88.     Defendant further violated the FDCPA by making false and deceptive representations that Plaintiff and other class member similarly situated owed a debt that they did not legally owe.

89.     The alleged debt was in fact not legally owed because it derived from medical services rendered to a Medicaid beneficiary. Defendant could not legally collect the alleged debt from Plaintiff and all other class members similarly situated.

90.     Defendant's representations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer in order to induce payments for alleged debt that is uncollectable as a matter of law.

91.     Defendant's debt collection actions constituted false, deceptive, or misleading representations or means used by Defendant in connection with the collection of a debt.

92.     As a result of Defendant's actions, Plaintiff and all other class members similarly situated suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, frustration and lost sleep. Plaintiff and all other class members similarly situated are entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

### COUNT III
### DEFENDANT'S VIOLATIONS OF
### FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f(1)

93.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

94.     Defendant further violated the FDCPA by using unfair or unconscionable means to collect a debt.

95.     Defendant's unfair and unconscionable means include, without limitation:

    a.  Attempting to collect an alleged debt from Plaintiff and all other class members similarly situated that derived from medical services rendered to a Medicaid beneficiary, for which collection was "not permitted by law" pursuant to 15 U.S.C. § 1692f(1);

b.  Misleading Plaintiff and all other class members similarly situated as to the validity of the debt; and/or

c.  Attempting to coerce, pressure and/or deceive Plaintiff and all other class members similarly situated into paying money that he did not in fact owe.

96.    Defendant's debt collection actions were false, deceptive, or misleading representations or means used in connection with the collection of an alleged debt.

97.    As a result of Defendant's actions, Plaintiff and all other class members similarly situated suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, humiliation, frustration, and loss of time.  Plaintiff and all other class members similarly situated are also entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## INDIVIDUAL CLAIMS

### COUNT I
### DEFENDANT'S VIOLATIONS OF
### FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e(2)(A)

98.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99.    The FDCPA is a comprehensive regulatory scheme that Congress enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors

and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. §§ 1692(a), (e).

100.    When Congress enacted the FDCPA in 1977, Congress had found that abusive debt collection practices harmed consumers by, among other things, increasing personal bankruptcy, marital instability, loss of employment, and invasion of privacy.

101.    Defendant used the mail to pursue an uncollectible debt against Plaintiff.

102.    Upon information and belief, Defendant utilizes these false, deceptive, misleading, unfair, and unconscionable tactics as a matter of course when attempting to collect debts from consumers such as Plaintiff, despite the fact that Defendant knew or should have known that the alleged debt derived from medical services rendered to Medicaid beneficiaries.

103.    Defendant's conduct is intentional. Defendant did not maintain procedures reasonably adapted to avoid such conduct, but rather intended the conduct.

104.    Defendant violated § 1692e(2)(A) of the FDCPA by misrepresenting the legal status of the alleged debt that Defendant attempted to collect from Plaintiff. Defendants' misrepresentations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer. 15 U.S.C. § 1692e(2)(A).

105.    Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

106.    Defendant's debt collection actions, including sending the Collection Letter, used false, deceptive, or misleading representations or means in connection with the collection of a debt.

107.    As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, humiliation, frustration and loss of time. He is entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## COUNT II
## DEFENDANT'S VIOLATIONS OF
## FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10)

108.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

109.    Defendant further violated the FDCPA by making false and deceptive representations that Plaintiff owed a debt that he did not legally owe.

110.    The alleged debt was in fact not legally owed because it derived from medical services rendered to a Medicaid beneficiary. Defendant could not legally collect the alleged debt from Plaintiff.

111.    Defendant's representations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer in order to induce payments for alleged debt that is uncollectable as a matter of law.

112.    Defendant's debt collection actions constituted false, deceptive, or misleading representations or means used by Defendant in connection with the collection of a debt.

113.    As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, humiliation, frustration and loss of time. He is entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**COUNT III**
**DEFENDANT'S VIOLATIONS OF**
**FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692f(1)**

114.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

115.    Defendant further violated the FDCPA by using unfair or unconscionable means to collect a debt.

116.    Defendant's unfair and unconscionable means include, without limitation:

    d.    Attempting to collect an alleged debt from Plaintiff that derived from medical services rendered to a Medicaid beneficiary, for which collection was "not permitted by law" pursuant to 15 U.S.C. § 1692f(1);

    e.    Misleading Plaintiff as to the validity of the debt; and/or

    f.    Attempting to coerce, pressure and/or deceive Plaintiff into paying money that he did not in fact owe.

117.    Defendant's debt collection actions were false, deceptive, or misleading representations or means used in connection with the collection of an alleged debt.

As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, frustration, and loss of time.  Plaintiff is also entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the FDCPA;

B. An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

C. Injunctive relief prohibiting Defendant's continued abusive debt collection conduct in violation of the FDCPA;

D. An award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

E. An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

F. Any pre-judgment and post-judgment interest as may be allowed under the law.

//

## <u>DEMAND FOR JURY TRIAL</u>

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted this 9th day of September 2024.

<div style="margin-left:40%">

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, New York 11365
T: (718)640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com


David Pinkhasov
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, New York 11365
T: (718) 701-4605
F: (718) 715-150
E: dpinkhasov@consumerattorneys.com


*Attorneys for Plaintiff*
*Mark Anthony*

</div>